CATHERINE Cox, as Executrix of EDWARD P. McGRATH, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 30168.)

CATHERINE Cox, as Executrix of EDWARD P. McGRATH, Deceased Administrator of the Estate of MARY McGRATH, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 30169.)

Court of Claims, December 9, 1954.

*Harry O. Lee* for claimants.

*Nathaniel L. Goldstein, Attorney-General (David Marcus* of counsel), for defendant.

LAMBIASE, J.  The Appellate Division of the Supreme Court having reversed this court's (YOUNG, J.) judgment on the law, and having ordered a new trial in each of the above-entitled claims, the said claims were brought on for a new trial before us.  It was stated by the Appellate Division in reversing that it had not yet considered the findings of fact.

Upon the new trial before us, by stipulation of the attorneys for the claimants and of the Attorney-General for the State of New York made in open court, the claims were submitted upon the record of the first trial thereof and subject to the particular agreements of counsel set forth in said stipulation, which agreements are particularly set forth at S. M. 8 through S. M. 10 of the minutes of the new trial.

Both claims arose out of personal injuries sustained by Mary McGrath, an incompetent, while she was confined in the Hudson River State Hospital, a hospital owned, maintained, and operated by the State of New York for the care and treatment of the mentally ill of this State.  Each claim alleges that: " Upon information and belief, that on the 19th day of November, 1949, while said Mary McGrath was an inmate of the Hudson River State Hospital, she was pushed, struck and assaulted by another inmate of said hospital, causing her to fall and to sustain severe and serious and permanent injuries, internally and externally, fracture of right femur."   (Fols. 18, 57, printed record on appeal.)

Both claims further allege: " Upon information and belief that the negligence of the State of New York, its officers, agents,

servants or employees, in the course of their employment, consisted of the following: (a.) In negligently and carelessly supervising and administering the care of the inmates of the Hudson River State Hospital, Poughkeepsie, New York. (b.) In failing to take every reasonable precaution to protect the said Mary McGrath from injury. (c.) In failing to furnish the said Mary McGrath with proper care, treatment and supervision. (d.) In failing properly to provide competent, reliable and proper medical and surgical treatment of the injuries received by said Mary McGrath. (e.) In failing immediately to notify said Edward P. McGrath of the injuries received by said Mary McGrath and in failing to afford him an immediate opportunity to provide proper surgical treatment for said Mary McGrath. (f.) In failing to provide proper and suitable supervision of the inmates of the Hudson River State Hospital." (Fols. 18 thru 21; 58 thru 60, printed record on appeal.)

Mary McGrath died some time after she had sustained the injury alleged in the claims, and during the trial, Edward P. McGrath, as administrator of the estate of Mary McGrath, deceased, was substituted for Edward P. McGrath as committee of the person and property of Mary McGrath, an incompetent person. It is not contended, however, and there is no claim made that her death was caused as a result of the alleged injuries. Her alleged assailant also died before the first trial of these claims was had. Furthermore, after the first trial and before the entry of judgment following the same, Catherine Cox, as executrix of the estate of Edward P. McGrath, deceased, was substituted for Edward P. McGrath as administrator of the estate of Mary McGrath, deceased; and Catherine Cox, as executrix of the estate of Edward P. McGrath, deceased, was substituted for Edward P. McGrath.

On August 18, 1949, Mary McGrath was admitted to the said Hudson River State Hospital, and there remained hospitalized until November 28, 1949. A diagnosis of her mental illness was made as follows: "*Diagnosis:* 13 Psychosis due to other metabolic etc., disease. 135 Hyperostosis of the internal table of the frontal bone." (Exhibit 11, clinical summary.) In the hospital record, her behaviour upon admission and during her stay in the hospital is described as follows: "antagonistic and resistive, showed perseveration in speech, was uncooperative with admission routine, irritable and evasive. * * * Poorly oriented "; " irritable, demanding and resistive at times. * * * Showed poverty of thought. At times was irrelevant, repeated phrases. Was confused, disoriented, and showed gross organic

mental defects "; " is talkative, irritable and disoriented ";
" has been confused, out of contact, and very restless ". (Exhibit
11, clinical summary.) There also appears, among other things,
in the hospital record, " Form 57–Med. History of Patient "
(exhibit 11) under date of October 18, 1949, the following:
" Wanders about the ward most of the day. She has to be
watched as she goes into other patients' dresser drawers."

At the time of the occurrence which resulted in the injuries
alleged in the claims, Mary McGrath was and for some time
prior thereto had been confined to what is designated as " Ward
6 " at the hospital. This ward was a " T " shaped section
about 200 feet in length, the cross corridor forming the top or
horizontal member of the " T " and being from 50 to 75 feet
in length. It consisted of a day room, dormitory, sitting room,
private rooms, a water section, and an office. It was classified
as a quiet ward for middle-aged and elderly women; and on
November 19, 1949, 100 patients, of whom one was Mary
McGrath, were confined therein. At about 3:00 P.M. of the day
of the occurrence alleged in the claims, viz., November 19, 1949,
there were two attendants, both women, on duty on this ward.
One of them, one B. L. Dingman, at the time of the alleged
occurrence was in the ward office and the other, one Madeline
James, was attending to and supervising the activities of the
ward's 100 inmates. While so engaged, Madeline James's atten-
tion was directed by the shouting of inmates to the room of
inmate Helen Lantz. She proceeded to said room and upon
entering it she found Mary McGrath on the floor of the room.
She did not see the manner in which Mary McGrath came to be
upon the floor, and, in fact, no eyewitness was produced upon
the first trial or the retrial of these claims to establish how
Mary McGrath came to be in that room and upon the floor
thereof.

Upon the first trial of these claims the trial court admitted
into evidence the hospital record of Mary McGrath (exhibit 11)
in which, among other things, there was an " Accident, Injury
Report " dated November 21, 1949, with the initials " DKS/R "
made by Dr. D. K. Schwartz, ward physician, which in part
reads as follows: " Patient Helen Lantz stated that patient
McGrath has come into her room on various occasions and pulled
the bedding and dresser drawers to pieces, so that when she
came in this time (Nov. 19th) she told patient McGrath to get
out and gave her a little push on the arm, and patient fell to
the floor." There was also admitted as part of the aforesaid
hospital record an entry dated November 20, 1949, over the

signature of said D. K. Schwartz, M.D., which referred to his above-quoted accident report; and also another "Accident Injury — Report" dated November 21, 1949, over the signature of one, W. C. Groom, M.D., acting senior director, which is to the same purport as the accident report of Dr. Schwartz. Objection was made by the State of New York to the admission into evidence of the foregoing accident reports and entries which objection was overruled by the trial court.

The Appellate Division (282 App. Div. 815–816) in its original decision dated July 2, 1953, among other things, said: "The crucial question upon this appeal arises from the admission into evidence of certain hospital records, purporting to show how the incompetent was injured. Apart from any inferences which might be drawn from the situation in which the incompetent was found immediately after the suffering of the injury, the claimant relied principally, for proof of the manner in which the injury was sustained, upon an accident report contained in the hospital record, to the effect that: ' Patient Helen Lantz stated that patient McGrath has come into her room on various occasions and pulled the bedding and dresser drawers to pieces, so that when she came in this time, November 19th, she told patient McGrath to get out and gave her a little push on the arm, and patient fell to the floor.' The Court of Claims Judge held that this record was admissible, in part upon the ground that it was an entry made in the regular course of business (Civ. Prac. Act, § 374-a) and in part upon the ground that it constituted an admission by the State against its interest. The admissibility of the record cannot be sustained upon either ground. * * * Neither the original report of the statement by the patient Helen Lantz nor the other entries by the State hospital employees paraphrasing Mrs. Lantz' statement, constituted an admission by the State of the truthfulness or accuracy of the patient's statement. The notations in the records constituted, at most, an admission that the patient had made the statement attributed to her but they did not constitute an admission by the State of the factual correctness of the contents of the patient's statement."

Although we are to pass upon all questions of fact *de novo,* these questions must be resolved by the application of the law of the case as the Appellate Division has declared it which is that the objections taken by the State of New York to the admissibility of the afore-mentioned accident reports, viz., those of Drs. Schwartz and Groom, and to the afore-mentioned entry in

the clinical notes of Dr. Schwartz which refers to his accident report, must be sustained. We do, therefore, sustain the objections thereto as to each of the above set forth claims upon this new trial, and we have not considered said evidence in arriving at our conclusion herein.

The question remains: Applying the law of the case as declared by the Appellate Division and having sustained by reason thereof on this new trial the objections of the State of New York to the evidence immediately hereinabove referred to, does the record as constituted without said evidence sustain claimants' burden of proof with respect to the manner in which Mary McGrath was injured? In our opinion it does.

There appears in the hospital record (notes, exhibit 11) the following entry: '' 11-19-49-3/10 P.M.— Pt. Helen Lantz pushed pt. M. McGrath to the floor, striking right side, placed in bed, notified Dr. Schwartz and seen by Dr. Schwartz and Dr. Bostika — B.L.D.'' The foregoing entry was made by a Mrs. Dingman, a hospital staff attendant, who was in charge of Ward 6 at the time of the occurrence alleged in the claims. It was made by her while she was acting within the scope of her employment as such staff attendant, it constitutes an admission of fact which is material to the issue, and it is binding upon the State of New York by reason thereof. In it she does not merely admit that Helen Lantz '' said '' that she pushed patient McGrath, nor does she merely admit that she '' heard '' that patient Lantz pushed patient McGrath. She admits for the State of New York by said entry that '' Pt. Helen Lantz pushed pt. M. McGrath to the floor, striking right side ''; and it is — in the language of *Reed* v. *McCord* (160 N. Y. 330, 341), '' plain admissions of facts and circumstances which attended the intestate's injury ''. And there also appears in the record the following testimony of Mr. McGrath: '' Q. I ask you if when you went to the Hudson River State Hospital at Poughkeepsie, New York, shortly after you received this letter to which reference has been made, if you had any conversation with Doctor Schwartz? A. Yes, I did. Q. Did you find out from him that Mary McGrath accidentally fell, or did you find out something else from him? A. He told me she was pushed.'' (Fol. 248, printed record on appeal.) Dr. D. K. Schwartz also was an employee of the State of New York acting within the scope of his employment when he told Edward P. McGrath that Mrs. McGrath was pushed. His testimony above quoted is an admission of a fact material to the issue.

It was admitted that no employee of the State of New York was present when inmate Mary McGrath received her injuries, and hence it is obvious that the Dingman entry and the testimony of Dr. Schwartz above quoted were not based upon the personal knowledge of said individuals, but upon what they had learned as to the situation and as to how Mary McGrath came to sustain her personal injuries. " ' In a civil action the admissions by a party of any fact material to the issue are always competent evidence against him, wherever, whenever or to whomsoever made ' (*Reed* v. *McCord, supra,* at p. 341), excepting, of course, confidential communications the disclosure of which is prohibited by statute, such as from client to counsel, from patient to physician, from penitent to clergyman or priest, and the like." (*Koester* v. *Rochester Candy Works,* 194 N. Y. 92, 98.) The theory upon which this class of evidence is held to be competent is that it is highly improbable that a party will admit or state anything against himself or against his own interests unless it is true. (*Reed* v. *McCord, supra.*) The admissibility of an admission is not affected by an apparent lack of personal knowledge of the fact admitted. If a party believes a fact from sufficient evidence to convince him of its truth, truth may be the circumstances which lead him to make the admission. (Ford on Evidence [1935], Vol. 2, § 172, p. 903; *Reed* v. *McCord, supra.*)

Both said testimony and the Dingman entry above quoted are competent and are properly admitted into evidence. (*Reed* v. *McCord, supra.*) Referring to admissions, the court in *Gangi* v. *Fradus* (227 N. Y. 452, 456–457), said: " The effect they have, in reason and sound judgment, upon the mind of the jury, in view of their language, character, the time when and person to whom they were made, the circumstances and conditions attending their making, and the other facts in evidence, is the effect they should have upon the claim of the party. \* \* \* The effect they shall have upon the issues being tried is for their determination. \* \* \* The jury may accept a part as true and put aside a part as not true. \* \* \* The jury shall determine whether or not they were made; if made, the conditions and circumstances under which they were made and the effect thereof, and their probative weight and value, which may range from the lowest, or none at all, to conclusiveness. The trial justice may profitably and without error, as the evidence justifies, bring to the jury's attention and guidance the rules of law that the probative effect and value of an admission depend upon the conditions and circumstances under which they were made, the time which has since elapsed and the

cogency or reasonableness of the explanation, if any, of the making and other like grounds or conditions.''

The inferences to be drawn from the situation in which the incompetent Mary McGrath was found together with the legally admissible admissions against the State of New York hereinbefore discussed, and together with the fact that there is no conflicting evidence adduced by the State of New York on this phase of these claims, in our opinion, are sufficient to sustain claimants' burden on this issue of the case having to do with the manner in which Mary McGrath was injured.

One charge of negligence (par. 4 Claim No. 30168; par. 6 Claim No. 30169; specifications '' a '', '' b '', '' c '' & '' f '') against the State of New York in substance is its failure to furnish adequate care and supervision of Mary McGrath in her condition of mental health. It is contended by claimants that Mary McGrath was a disturbing influence on the ward to which she was assigned; that her propensity for annoying others and wandering into other inmates' rooms and opening up dresser drawers was apt to provoke an assault upon her or to cause an accident which might result in injury to her; that the State of New York, its officers and employees knew or should have known of the foregoing, and that, notwithstanding the same, it neglected and failed to furnish adequate care and supervision of Mary McGrath as a result of which she was injured. This contention is denied by the State of New York. We think that claimants have sustained their contentions.

Mary McGrath's habit of wandering into the rooms of inmates and while therein opening and closing dresser drawers and rummaging around and tearing and pulling sheets off the beds was a disturbing and annoying trait. The State of New York, its officers and employees, knew or should have known that because of such traits Mary McGrath was apt to provoke an assault upon herself or to cause an incident which might result in injury to her, and that she needed '' watching '' and '' care and supervision '' (claimants' exhibit 11). Concededly there were but two attendants assigned to this ward containing about 100 inmates — a ward in which there were frequent fights with pushing and shoving, disturbances, and altercations among the inmates, and that just before Madeline James, one of the attendants, found Mary McGrath on the floor in inmate Lantz' room, there was but one of these two attendants, said Madeline James, overseeing the activities of the inmates. In our opinion, the State of New York failed to provide adequate care and supervision of inmate Mary McGrath, and that said failure was

negligence which negligence was the proximate cause of the occurrence resulting in the injuries to Mary McGrath which injuries we detail more particularly hereinafter.

Upon this record we may not and we do not find any negligence on the part of Mary McGrath proximately causing or contributing to the occurrence which resulted in her injuries. The claim of Edward P. McGrath, husband of Mary McGrath, being derivative of that of Mary McGrath, said finding enures to the benefit thereof, and, in addition, we find no negligence on the part of claimant Mary McGrath's husband or of his estate which would defeat recovery on the part of his estate herein.

There is no question that Mary McGrath on the 19th day of November, 1949, suffered a broken hip, a fracture through the neck of the femur, and it is conceded that by reason of her injuries Mary McGrath never walked after November 19, 1949, and up to the date of her death on March 4, 1951. During all this period of time she was subjected to pain and suffering necessarily attendant upon said injury, and she was confined as a bed patient to various hospitals. What the eventual outcome would have been of her injury insofar as her ability to walk is concerned, we do not know (fol. 746, printed record on appeal), since her death from an unconnected cause intervened.

There is a further allegation of negligence made by claimants against the State of New York, viz., that the State of New York failed to provide competent, reliable and proper medical and surgical treatment of the injuries sustained by Mary McGrath; and further that it failed to afford Edward P. McGrath, husband of Mary McGrath, an immediate opportunity to provide proper surgical treatment for his wife. This allegation is also denied by the State of New York. We do not think that the record sustains claimants' position with reference to the medical and surgical care and treatment afforded Mary McGrath by the State of New York, and we hold that claimants have not sustained their burden on said issue. We have, therefore, disregarded the same in arriving at our conclusion herein.

Mary McGrath was sixty-two years of age at the time of her admission to the Hudson River State Hospital. Her mental illness was such that she could never have resumed her place in society as a useful and gainful member thereof. Her estate is nonetheless entitled to an award herein which adequately compensates for the pain and suffering of Mary McGrath following her injuries and up to the time of her death.

Edward P. McGrath, husband of Mary McGrath, as a result of the injuries sustained by his wife, incurred expenses as follows limited in amount, however, to that alleged in his claim herein:

Doctors' Bills ......................$ 175.00
Hospital Bills .................... 1,972.30
                                    _____
Total...................... $2,147.30

Upon this record no damages for loss of services and society of Mary McGrath may be awarded, and the estate of Edward P. McGrath concedes that none may be awarded. We, therefore, have awarded none.

A counterclaim in the sum of $329.07 has been interposed in Claim No. 30169. (Record on appeal, fols. 25–28.) The same was dismissed upon the first trial. (Record on appeal, fol. 43.) The State does not question that dismissal. The counterclaim has not been established, and we, upon this new trial, dismiss the same upon the merits.

We have concluded, therefore, that claimants herein are entitled to an award against the State of New York in an amount which will adequately compensate for the damages sustained. We find for claimant, Catherine Cox, as executrix of the estate of Edward P. McGrath, deceased (originally Edward P. McGrath), Claim No. 30168, against the State of New York in the sum of $2,147.30, and for claimant, Catherine Cox, as executrix of the estate of Edward P. McGrath, deceased (originally Edward P. McGrath as committee of the person and estate of Mary McGrath, an incompetent person), Claim No. 30169, against the State of New York in the sum of $7,500.

The foregoing constitutes our written and signed decision. (Civ. Prac. Act, § 440.)

Let judgment be entered accordingly.